IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHAD VAN DIEST, ) | |
| ) | Civ. No. 07-0312-S-BLW |
| Plaintiff, ) | |
| ) | MEMORANDUM DECISION |
| v. ) | |
| ) | |
| MATTHEW C. WILLIAMS, et al., ) | |
| ) | |
| Defendants. ) | |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by defendants. The motion was heard on May 13, 2008, and the Court took it under advisement. For the reasons expressed below, the Court will grant the motion.

## FACTUAL BACKGROUND

Plaintiff Van Diest registered as a sex offender in Idaho's Valley County in 2005. If he was to move out-of-state, he was required by Idaho law to provide written notice to the Idaho State Police within five days of so doing. *See* Idaho Code § 18-8309.

**Memorandum Decision – page 1**

In 2006, Van Diest was arrested and charged in Valley County with the felony offense of lewd conduct with a minor. He was acquitted of the charge, and moved to Washington after being released from jail. He failed to provide the written notice of his change of address as required by Idaho law.

On July 3, 2006, Valley County prosecutor Matthew Williams received a telephone call from Kathy Martin, an employee of the Chelan County Sheriff's Office in Wenatchee Washington. She asked about the status of Van Diest's criminal charges in Idaho. Williams informed her that Van Diest had been acquitted. She also asked about his "level of danger" and Williams responded that "he was a dangerous individual." *See Exhibit 7 to Charney Affidavit*.

Williams states that at no time during the conversation did Martin inform him that Van Diest had registered as a sex offender in Chelan County, Washington. When the call was over, Williams told his deputy, Carol Brockmann, that someone from Chelan County had called, *id*., and that "he believed [Van Diest] had moved to Washington [but] . . . did not have any information which could be validated." *Brockmann Affidavit* at ¶ 5. Williams also recalls telling Brockmann that the Washington caller "had specifically not provided notification of registration." *Id*.

In response to Williams' discussion, Brockmann "continually checked the National Sex Offender Registration site" to determine if Van Diest had registered

**Memorandum Decision – page 2**

anywhere as a sex offender but found no listing.  Consequently, she sought an arrest warrant before Magistrate Henry Boomer on the ground that Van Diest had violated Idaho Code § 18-8309 for failing to provide notification that he had moved out-of-state.

At the probable cause hearing, Brockmann informed Magistrate Boomer of the following: (1) Van Diest never returned to his Valley County residence after being acquitted of the charges a week prior; (2) there is reason to suspect Van Diest is in Washington; (3) Van Diest never provided the notification of his change of address as required by Idaho law; (4) he is not listed on the Washington state registry for sex offenders; (5) he has "not registered anywhere;" and (6) "if in fact he registered within the state of Washington he didn't provide us that notification . . . ." *See Exhibit 3 to Charney Affidavit*.  In fact, Van Diest had registered as a sex offender in Washington on June 30, 2006, about a week prior to the hearing before Magistrate Boomer on July 7, 2006.  Van Diest's Washington registration did not appear on the National Sex Offender Registration site at the time it was checked by Brockmann prior to her appearing at the probable cause hearing.

The Magistrate found that Brockmann had shown probable cause for the arrest warrant.  Brockmann then stated that since Van Diest was in Washington, they would seek to extradite him "so I was thinking of $30,000 dollars" for bail.

**Memorandum Decision – page 3**

*Id*.  The Magistrate had been considering a bail of $50,000, but he agreed to set bail at $30,000.  *See Magistrate Boomer Affidavit.*

Van Diest was arrested on July 14, 2006 in Washington.  He remained in jail because he could not afford the $30,000 bond.  His father refused to post bond on his behalf given the possibility that Van Diest could be rearrested and subject to the same high bond upon reentering Idaho.

Van Diest was transported back to Valley County, Idaho on September 1, 2006.  On September 26, 2006, Williams now recommended to the Magistrate that the bond was reduced to $5,000 "since it was now clear that [Van Diest] had registered in Washington . . . ."  *See Defendants' Brief* at p. 4.  Counsel for defendants explained at oral argument that Van Diest's registration was one in a number of factors that led Williams to seek a reduction in the bail to $5,000.  The Magistrate agreed and bond was reduced to $5,000.  Van Diest's father immediately posted the bond and Van Diest was released.  He had been incarcerated for a total of 74 days.

On the charge of violating Idaho Code § 18-8309, Van Diest entered a plea of guilty and was sentenced to a term of probation.  At the sentencing hearing, Brockmann stated that "it took like three months or the [State of Washington] to verify that he, in fact, did go back there and register as appropriate but in the mean

**Memorandum Decision – page 4**

time we didn't know where he was." *See Exhibit 8 to Charney Affidavit*. Van Diest's attorney immediately disputed the assertion that it took three months for defendants to receive notification from Washington that Van Diest had registered there, and Brockmann, nodding her head in agreement with opposing counsel, did not dispute his rebuttal. *Id*.

## SUMMARY JUDGMENT STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v.*

**Memorandum Decision – page 5**

*Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case."  *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim.  *Id*.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some

**Memorandum Decision – page 6**

reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

Plaintiff Van Diest brings this § 1983 claim alleging that his constitutional rights were violated.  More specifically, he alleges that the defendants made false statements to persuade a Magistrate to set an excessive bail that caused Van Diest to be falsely imprisoned and constituted an abuse of process.

In his briefing, Van Diest cites state tort cases as governing his claims, yet the Supreme Court has held that § 1983 "imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  *Baker v. McCollan*, 443 U.S. 137, 146 (1979).  Recognizing this, Van Diest's counsel stated at oral argument that his claim was based on a substantive due process violation because his false imprisonment and the defendants' abuse of process were done in an egregious manner.

To prove that an official's conduct violated substantive due process, a

**Memorandum Decision – page 7**

plaintiff must show that the conduct "shocks the conscience" and "violates the decencies of civilized conduct." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Even viewing the evidence in the light most favorable to Van Diest, no reasonable juror could find that defendants' conduct shocked the conscience or violated the decencies of civilized conduct.

There is no evidence that either Williams or Brockmann knew that Van Diest had registered as a sex offender in Washington on June 30, 2006. Prior to the bail hearing, Brockmann checked "continually" on the internet registry database for evidence of Van Diest's sex offender registration but found nothing. It is undisputed that prior to the bail hearing, the internet database did not show that Van Diest had registered as a sex offender in Washington.

At the bail hearing, Brockmann did state inaccurately to the Magistrate that Van Diest "has not registered anywhere," but she qualified this just a few minutes later by saying that "if in fact he registered within the state of Washington he didn't provide us with that notification . . . ." Van Diest argues that Brockmann implied that he was on the loose and evading detection by telling the Magistrate that the prosecutor's office "has not been able to verify that he is in the State of Washington." However, just a few minutes later she clarifies this by telling the Magistrate that Van Diest "is in the state of Washington."

**Memorandum Decision – page 8**

Brockmann's conduct at the bail hearing could not be found by any reasonable juror to shock the conscience. Van Diest argues, however, that the call from Washington should have been an obvious signal to Williams and Brockmann that Van Diest had registered in Washington, and their failure to ask Kathy Martin if Van Diest had so registered shows they were turning a deliberate blind eye to that fact. This ignores the fact that Brockmann told the Magistrate about that call. If the call was an obvious signal to Williams and Brockmann that Van Diest had registered in Washington, it would have been just as obvious to the Magistrate. In other words, Brockmann passed on the necessary information to the Magistrate to allow him to exercise his independent judgment. With this information, he could have inquired further into Van Diest's status.

To rise to the level of a constitutional violation, the conduct of Williams and Brockmann must "have prevented [the Magistrate] from exercising his independent judgment." *Id*. at 663. Yet by informing the Magistrate of what they knew about the Washington call, Brockmann passed on to the Magistrate what she knew, and allowed him to exercise his independent judgment. Such conduct certainly cannot be deemed to shock the conscience.

Finally, Van Diest argues that both Williams and Brockmann revealed their true intent to seek revenge against him at two different hearings. When Van Diest

**Memorandum Decision – page 9**

was acquitted in the 2006 trial, the judge asked Williams if there were any other charges on which to hold Van Diest and Williams stated "not yet." Van Diest argues a jury could infer that Williams was upset at Van Diest for being acquitted and wanted revenge. Van Diest also points to Brockmann's statement at the sentencing – discussed above – as evidence that she was also seeking to punish Van Diest.

Neither statement shocks the conscience. More importantly, there is no evidence that Williams and Brockmann used bail to get revenge on Van Diest. The Magistrate was able to exercise his independent judgment, and he set the bail. There is no evidence in the record that $30,000 is not a standard bail for a failure to provide notification of a change of address for a sex offender. The burden was on Van Diest to present that evidence, and that burden was not met.

For these reasons, the Court finds that no reasonable juror could find a constitutional violation on the part of defendants Williams and Brockmann. The Court will accordingly grant summary judgment as to the § 1983 claims against Williams and Brockmann.

With those claims dismissed, the § 1983 claims against Valley County must also be dismissed. Because all federal claims have now been dismissed, and only state law claims remain, the court will exercise its discretion to dismiss this case

**Memorandum Decision – page 10**

without prejudice to the right of the plaintiff to re-file the case in state court.  *See* 28 U.S.C. § 1367(c)(3).  The Court will issue a separate Judgment as required by Rule 58(a).



DATED:  **May 16, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision – page 11**